UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWARD L. GOFORTH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-01955-NCC |
| ANDREW M. SAUL,[1] Commissioner of Social Security | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Edward L. Goforth ("Plaintiff") for Supplemental Security Income ("SSI") under XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

**I. PROCEDURAL HISTORY**

Plaintiff filed his application for SSI on October 15, 2013 (Tr. 146-54). Plaintiff was initially denied on November 27, 2013, and he filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 55-58, 61-84). After a hearing, by decision dated October 24, 2014, the ALJ found Plaintiff not disabled (Tr. 6-24). On February 29, 2016, the

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council denied Plaintiff's request for review (Tr. 1-4). Upon appeal by Plaintiff to the United States District Court for the Eastern District of Missouri, the Honorable Magistrate Judge John M. Bodenhausen reversed and remanded the case on May 9, 2017 (Tr. 282-96). After a second hearing, by decision dated January 26, 2018, a different ALJ found Plaintiff not disabled (Tr. 193-208). The Appeals Council denied Plaintiff's request for review on October 4, 2018 (Tr. 170-73). As such, the ALJ's January 26, 2018 decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 15, 2013, the application date (Tr. 195). The ALJ found Plaintiff has the severe impairments of anxiety and a back condition variously diagnosed as chronic back pain, lumbago, and mild lumbar spondylosis, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 196). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 198). Plaintiff cannot climb ladders, ropes or scaffolds (*Id.*). Plaintiff can occasionally climb ramps and stairs and can occasionally engage in stooping, crouching, and crawling (*Id.*). Plaintiff is limited to performing simple, routine tasks but not in a fast paced, production

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

environment such as an assembly line (*Id.*). Plaintiff can have occasional interaction with co-workers and the public (*Id.*). Plaintiff is limited to work that would require only occasional changes in the work setting (*Id.*). The ALJ found Plaintiff does not have any past relevant work but that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform including packer, product inspector, and fast food worker (Tr. 206-07). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 208). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues regarding the ALJ's RFC evaluation. First, Plaintiff asserts that the ALJ failed to properly evaluate RFC when she did not provide any limitation regarding Plaintiff's ability to interact with supervisors (Doc. 18 at 3-5). Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Steven Adams, Psy.D. (*Id.* at 5-8). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Interaction with Supervisors

First, Plaintiff asserts that the ALJ failed to properly evaluate RFC when she did not provide any limitation regarding Plaintiff's ability to interact with supervisors (Doc. 18 at 3-5).

Specifically, Plaintiff argues that while the ALJ found Plaintiff has a moderate limitation in his ability to interact with others at step 3 and found Plaintiff limited to occasional interaction with co-workers and the public, the ALJ did not limit Plaintiff's ability to interact with supervisors in her RFC determination at step 4 (*Id.* at 3).

At step 3, the ALJ evaluates whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.* If the ALJ does not find that the claimant meets a listing, then the ALJ's analysis continues to Step 4. 20 C.F.R. § 416.920. At Step 4, the ALJ determines claimant's RFC and thus whether a claimant is prevented from doing his past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f).

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting

*Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

The Court finds the ALJ's RFC determination as to Plaintiff's ability to interact with others to be supported by substantial evidence and that the ALJ's analysis at steps 3 and 4 are not inconsistent. In this case, at step 3 the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 196). In so doing, the ALJ considered the paragraph B criteria of listing 12.06 and found Plaintiff has moderate limitation in the area of interreacting with others (Tr. 197). As support for her finding, the ALJ indicated "[t]he [Plaintiff] reported some problems in this area, but admittedly gets along with friends and immediate family members. He is able to leave home alone on a regular basis" (Tr. 197). In her RFC determination at step 4, the ALJ limited Plaintiff to "occasional interaction with co-workers and the public" (Tr. 198). The RFC determination does not include any limitation regarding Plaintiff's interaction with supervisors.

As a preliminary matter, the determinations at steps 3 and 4 are distinct. "[T]he different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill,* 888 F.3d 978, 980 (8th Cir. 2018). *See also Lacroix v. Barnhart*, 465 F.3d 881, 883 n.3 (8th Cir. 2006) ("Each step in the disability determination entails a separate analysis and legal standard."). While the ALJ addressed Plaintiff's allegations that he could only get along with friends and immediate family, the ALJ did not find Plaintiff to have any issues interacting with supervisors (Tr. 199, 228-29). *See cf. Emery v. Berryhill*, No. 17-CV-1988 (TNL), 2018 WL 4407441, at *3 (D. Minn. Sept. 17, 2018) (finding reversable

7

error when the ALJ noted that plaintiff made use of a cane but made no specific finding as to whether the cane used by plaintiff was medically required and whether its use was supported by the medical record). Plaintiff argues that the evidence shows that he has difficulty working for someone else (Doc. 18 at 3). In support of his assertion, Plaintiff notes that he indicated on his November 24, 2013 Adult Function Report that his ability to get along with authority figures "verys" [sic.] and that he does not go outside because it is difficult for him to be around people (Tr. 131, 134). Plaintiff also highlights other self-reports that he walked out of a job at Wal-Mart and could not work for an employer in 2012 in part because "[h]is anxiety makes it difficult for him to be in social situations" (Tr. 33, 122). Indeed, Plaintiff frequently reported that he had limitations "getting along with people" or "can't be around a lot of people" (Tr. 133, 157).

Notwithstanding this limited record of self-reported issues in this area, substantial evidence supports the ALJ's finding that Plaintiff was not significantly limited as a result of his mental health impairments. In her detailed analysis of the limited record, the ALJ preliminarily noted that "treatment is minimal at best" (Tr. 201). As indicated by the ALJ, Plaintiff sought mental health treatment in 2013 and was prescribed medication. However, he was non-compliant with his medication (Tr. 201, 150-58). Thereafter, Plaintiff discontinued mental health care treatment, even noting in a December 2015 emergency room visit that he was not being treated for mental or emotional problems (Tr. 202, 453). Plaintiff next sought treatment for his mental health impairments in April 2016 when he established care with a primary care physician (Tr. 202, 496). Plaintiff's primary care provider prescribed him medication after his initial visit at which he reported insomnia and anxiety with panic attacks (Tr. 202, 496-97). Plaintiff reported significant improvement on medication (Tr. 202, 469, 472, 474, 479, 489). Indeed, by September 2017, Plaintiff's mental status examination was unremarkable with full

orientation and normal mood and affect (Tr. 471-72). Plaintiff, as highlighted by the ALJ, has not sought, received, or required more specialized mental health treatment from a psychiatrist, psychologist, or psychotherapist (Tr. 203). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) (holding that the failure to seek mental treatment is a relevant consideration when evaluating a claimant's mental impairment); *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Plaintiff has also not required any emergent treatment or inpatient care for any mental health impairhart (Tr. 203). *See Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations . . . limited treatment of symptoms, [and] failure to diligently seek medical care"); *Vanlue v. Astrue*, 2012 WL 4464797, at *12 (E.D. Mo. Sept. 26, 2012) (affirming the ALJ's finding that depression was not a severe impairment where the claimant had sought only minimal and conservative treatment and the claimant never required more aggressive forms of mental health treatment than medication). Therefore, the ALJ's determinations at steps 3 and 4 are not inconsistent and are supported by substantial evidence.

**B. Opinion of Dr. Steven Adams, Psy.D.**

Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Steven Adams, Psy.D. (Doc. 18 at 5-8). Indeed, the Honorable Magistrate Judge John M. Bodenhausen previously reversed and remanded this action in part because the previous ALJ failed to clearly indicate whether she discounted Dr. Adams' opinion and why (Tr. 282-96). Plaintiff again suggests the Commissioner erred, specifically asserting that the current ALJ did not consider that

Plaintiff's poor judgment, poor impulse-control and low intelligence led to somatization disorder or an overall inability to deal with his stressors, symptoms, and work activities (Doc. 18 at 6).

On August 28, 2014, Dr. Adams performed a consultative psychological evaluation at the request and expense of the Missouri Department of Social Services to determine Plaintiff's eligibility for Medicaid (Tr. 165). Dr. Adams diagnosed Plaintiff with bipolar affective disorder and assigned Plaintiff a GAF[3] Score of 48 (Tr. 168). In so doing, as noted by the Plaintiff, Dr. Adams found that Plaintiff had poor judgment, poor impulse control, and low intelligence (Tr. 167). Regarding Plaintiff's functional capacity, Dr. Adams determined that Plaintiff is able to understand and remember simple instructions; does not seem able to sustain his concentration and persistence on simple tasks; does not seem able to interact in moderately demanding social situations; and seems able to adapt to a typical work environment although his health problems may prevent him from working (Tr. 168).

The ALJ properly afforded the opinion of Dr. Adams "partial weight" (Tr. 205). First, the ALJ found the report to be internally inconsistent, noting that "[i]t is inconsistent that the [Plaintiff] would not be able to sustain concentration and persistence, but could adapt to a typical work environment" (Tr. 205). *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (internal quotation marks omitted) ("Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies.").

---

[3] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

Second, the ALJ found Dr. Adams' report to be inconsistent with the medical record as a whole, specifically indicating that while Dr. Adams said that Plaintiff may be prevented from working due to health problems, the medical evidence at this time did not support that assessment (Tr. 168, 205). To the extent Dr. Adams references Plaintiff's left shoulder nerve damage, arthritis in knees and hands, and chronic pain in the feet and hands, the ALJ suggests that these references appear to be based upon Plaintiff's subjective statements as the medical record also does not support this determination nor was this an examination of Plaintiff's physical impairments (Tr. 168, 205). Indeed, as noted by the ALJ, the only physical diagnoses at the time of this examination were of foot dermatitis and perhaps the note from a mental health nurse practitioner indicating "osteoarthritis, generalized involving multiple sites" (Tr. 150, 159). The ALJ also correctly noted that there were "very few physical symptoms and no specific objective testing or imaging in the record at the time of the Medicaid assessment" (Tr. 205). Indeed, the only physical findings of record regarding Plaintiff's back or musculoskeletal symptoms prior to Dr. Adams' report were by a Dr. Karl D. Killion, D.O. who noted in December of 2013 that while Plaintiff's back was tender to palpation over the lumbar-sacral spine, he had the full range of motion in his shoulder (Tr. 162). In a November 2014 medical note, Dr. Killion indicated that Plaintiff continued to have chronic back pain and should pain but stated, "pain medicine helps with activities of daily living. Denies any side effects." (Tr. 510). *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (finding an ALJ may afford an opinion less weight if it is "inconsistent with or contrary to the medical evidence as a whole"); *Hilderbrand v. Berryhill*, No. 4:16-CV-405 (CEJ), 2017 WL 2618269, at *23 (E.D. Mo. June 16, 2017) (finding the ALJ's decision supported by substantial evidence when the ALJ gave the medical opinion of a consultative examiner "minimal weight" relying, in part, on its

11

inconsistency with the record as whole including records that indicated that despite plaintiff's diagnosis, she had normal mental status findings).

Third, the ALJ indicated that Dr. Adams "noted symptom magnification" (Tr. 205). Specifically, Dr. Adams found that Plaintiff "appeared to over report some of his symptoms" (Tr. 167). *See Baker v. Barnhart*, 457 F.3d 882, 892-93 (8th Cir. 2006) (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination). Indeed, as highlighted by the ALJ, at the time of the examination, Plaintiff was repeatedly noncompliant with medication and Dr. Adams' indicated that Plaintiff "did not seem very motivated for psychotherapy" (Tr. 151, 166, 168, 205). *See, e.g.,* Tr. 155 ("Patient is not compliant with medication as prescribed. Detail: Noncompliant with appointments; out of medication."). *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("[A] failure to follow prescribed medical treatment without good cause is a basis for denying benefits."). Although Plaintiff suggests that his noncompliance was a result of his lack of judgment, a symptom of his mental illness, the record does not support this assessment. In fact, later records indicate that Plaintiff experienced good control with treatment and compliance suggesting that his initial noncompliance was not linked to his mental illness (Tr. 471-72, 489). *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Therefore, the ALJ's evaluation of Dr. Adams' report is supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 3rd day of March, 2020.

                                                  /s/ Noelle C. Collins
                                                  NOELLE C. COLLINS
                                                  UNITED STATES MAGISTRATE JUDGE